CORROVA, d.b.a. TAT Restaurant, Appellant,

v.

TATMAN et al., Appellees.

[Cite as *Corrova v. Tatman*, 164 Ohio App.3d 784, 2005-Ohio-6877.]

Court of Appeals of Ohio,
Fifth District, Muskingum County.

No. CT2005–0002.

Decided Dec. 20, 2005.

Stewart R. Jaffy, Marc J. Jaffy, and Alan D. Eakins, for appellant.

William J. Taylor and Scott D. Eickelberger, for appellee.

EDWARDS, Judge.

{¶ 1} Plaintiff-appellant, James Corrova, d.b.a. TAT Restaurant, appeals from the December 16, 2004 judgment entry of the Muskingum County Court of

Common Pleas granting summary judgment to defendants-appellees John Tatman, Barbara Tatman, and Tatman, Inc.

### Statement of the Facts and Case

{¶ 2} Appellant, James Corrova, owns a restaurant and carryout business in Columbus, Ohio, known as "TAT Restaurant."[1] The trade name registration for TAT Restaurant was filed by appellant on December 9, 1959, and was in full force and effect as of September 7, 2004. Appellant's restaurant serves Italian food, including pizza. The sign above appellant's restaurant contains the capital letters "TAT."

{¶ 3} Appellees John and Barbara Tatman own a restaurant located on Maysville Pike in Zanesville, Ohio, which is in Muskingum County, called "TAT's Pizzeria South." Appellees originally owned a restaurant at the same location called "Adornettos," but after their licensing agreement with Mr. Adornetto expired in December of 2002, appellees changed the name to "TAT's Pizzeria South." Appellees registered the name "TAT's Pizzeria South" with the Ohio Secretary of State on or about November 6, 2002. The sign for appellees' restaurant also contains the capital letters "TAT."

{¶ 4} The signs for both restaurants use a red and green color scheme.

{¶ 5} The parties have stipulated that the distance between the two restaurants is 54 miles.

{¶ 6} On October 30, 2003, appellant filed a complaint against appellees in the Muskingum County Court of Common Pleas. Appellant, in his complaint, alleged in part that appellees' use of the "TAT" name was likely to cause confusion or misunderstanding as to the relationship or affiliation between the two restaurants. Appellant specifically sought an injunction restraining appellees from using the name "TAT's Pizzeria" or the letters "TAT" in a restaurant name, alleging that appellees' use of the name was a deceptive trade practice under R.C. 4165.02 and violated appellant's common law right to protection of his trade name.

{¶ 7} Subsequently, both parties filed motions for summary judgment. Pursuant to a judgment entry filed on December 16, 2004, the trial court denied appellant's motion while granting that filed by appellees.

{¶ 8} Appellant now raises the following assignments of error on appeal:

{¶ 9} "I. The common pleas court erred in granting defendants' motion for summary judgment and in denying plaintiff's motion for summary judgment.

---

1. The actual name of appellant's restaurant is "TAT Ristorante di Famiglia."

{¶ 10} "II. The common pleas court erred in failing to recognize that plaintiff is entitled to an injunction under both common law and R.C. Chapter 4165 against defendants' use of 'TAT' in their restaurant name and/or sign.

{¶ 11} "III. The common pleas court erred both by applying the wrong standard to the determination of whether plaintiff was entitled to an injunction to prevent defendants' use of 'TAT' in their restaurant name and/or sign and in failing to apply the proper standard.

{¶ 12} "IV. The common pleas court erred in failing to recognize that the evidence demonstrated that defendants' use of 'TAT' in its restaurant name and/or sign resulted in both actual and potential confusion which entitled plaintiff to an injunction."

{¶ 13} This matter reaches us upon a grant of summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212. Therefore, we must refer to Civ.R. 56(C), which provides the following: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶ 14} Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. "[B]are allegations by the moving party are simply not enough." *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 430, 674 N.E.2d 1164. The moving party must specifically point to some evidence that demonstrates that the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. Id. at 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

{¶ 15} Furthermore, trial courts should award summary judgment with caution. "Doubts must be resolved in favor of the non-moving party." *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138.

{¶ 16} It is pursuant to this standard that we review appellant's assignments of error.

### I, II, III, IV

{¶ 17} Appellant, in his four assignments of error, challenges the trial court's order granting appellees' motion for summary judgment while denying that filed by appellant. Appellant specifically contends that the trial court erred in granting appellees' motion for summary judgment and in denying that filed by appellees and that the court applied the wrong standard of law. For the following reasons, we reverse the judgment of the trial court and remand this matter to the trial court for further proceedings.

{¶ 18} Appellant, in his complaint, alleged that he was entitled to an injunction under both common law and R.C. Chapter 4165 because appellees committed deceptive trade practices. Appellant's common-law deceptive-trade-practices claim is "based on the principle that it is a deceptive trade practice for one person to use a trade name similar to another person's established trade name, where the natural and probable consequence of the use of the similar name would be to mislead, deceive, or confuse the public into believing that there is an identity, affiliation, or relationship between the two persons." *Leventhal & Assoc., Inc. v. Thomson Central Ohio* (1998), 128 Ohio App.3d 188, 195, 714 N.E.2d 418.

{¶ 19} In turn, appellant's statutory deceptive-trade-practices claim is based upon R.C. 4165.02(B), and (C), which provide:

{¶ 20} "A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: * * *

{¶ 21} "(B) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

{¶ 22} "(C) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another[.]"

{¶ 23} When adjudicating claims arising under the Ohio Deceptive Trade Practices Act, Ohio courts apply the same analysis applicable to claims commenced under analogous federal law. See *Cesare v. Work* (1987), 36 Ohio App.3d 26, 28, 520 N.E.2d 586, 590. The standard of proof necessary to prevail in an action for injunctive relief is a showing of "likelihood of confusion." Id. at 29, 520 N.E.2d 586, citing *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.* (C.A.6 1982), 670 F.2d 642, 647. Furthermore, a mere showing that

trade practices tend to create a false impression is sufficient to warrant injunctive relief. Id. "Likelihood of confusion requires a showing that the ordinary consumer will be misled or deceived by the similarity between the products at issue." See *Leventhal,* supra, 128 Ohio App.3d, at 197, 714 N.E.2d 418.

{¶ 24} Thus, as noted by appellees in their brief, "[t]he standard of proof necessary to prevail in an action for injunctive relief [whether the claim is based on common law or is made under R.C. 4165] is a showing of likelihood of confusion." (Emphasis added).

{¶ 25} Appellant, in the affidavit attached to his motion for summary judgment, stated that his restaurant draws customers from various neighboring counties, including Muskingum County, that he learned of the existence of appellees' restaurant from some of his customers who thought that he had expanded his restaurant operation into Zanesville, and that suppliers from whom he was buying food products confused his restaurant with appellees' restaurant in Zanesville. Appellant further indicated that he has received telephone calls asking if his restaurant is the same operation as appellees' and that "[c]ustomers frequently ask me if Zanesville TAT is my restaurant or tell me that they have seen or been to my restaurant in Zanesville. Since approximately January of 2003, these remarks or questions by customers have occurred on the average of four or five times per month." Appellant's daughter, who is a manager at his restaurant, stated in her affidavit that customers have asked her whether appellant owns the "TAT" restaurant in Zanesville or have told her they have seen appellant's new restaurant in Zanesville.

{¶ 26} Appellant, in support of his motion for summary judgment, also attached the affidavit of Carma Jean Rausch, appellant's customer of 30 to 35 years. Rausch, in her affidavit, indicated that she eats at appellant's restaurant at least once a week and that approximately seven people who know that she frequents appellant's restaurant asked her whether the TAT's Pizzeria in Zanesville was related to appellant's restaurant or "tell [her] that they saw that the Columbus TAT Restaurant had opened a restaurant in Zanesville." Similarly, Jeffrey Kirkbride, who is appellant's son-in-law and is employed as a manager for Dr Pepper/7UP in the central Ohio area, indicated in an affidavit attached to appellant's motion that at least 25 people had either asked him whether TAT's Pizzeria in Zanesville was appellant's restaurant or had told him that they noticed that appellant had opened a restaurant in Zanesville. In support of his motion, appellant also attached affidavits from Norma Allen and Frank Fahner, appellant's long-time customers. Both, in their affidavits, stated that they had driven by appellees' Zanesville restaurant and assumed, due to the similarity in names, that appellant had opened a restaurant in Zanesville.

{¶ 27} In addition, appellant, in support of its motion for summary judgment, supplied the trial court with affidavits from Ralph Geary and Carole Gischel.

Geary, in his affidavit, stated that he had been going to appellant's restaurant since the late 1950s and to "the restaurant located at 2440 Maysville Pike" in Zanesville since the late 1980s. Geary further indicated that when the restaurant on Maysville Pike changed its name in late 2002 to TAT's Pizzeria South, he assumed, based on the similar names and similar signs, that the two restaurants were affiliated with each other. In turn, Gischel, in her affidavit, stated as follows:

{¶ 28} "1. I presently reside at 13065 Heimberger Road, Baltimore, Ohio 43105.

{¶ 29} "2. I have been eating at the TAT Restaurant in Columbus, Ohio for approximately 30 years. On the average, I eat at the restaurant approximately once a month.

{¶ 30} "3. The TAT Restaurant has very good food and has a reputation for serving good Italian food and pizza.

{¶ 31} "4. I frequently use the TAT Restaurant as a place to celebrate special occasions. For example, we held my father's 80th birthday party at the TAT Restaurant.

{¶ 32} "5. I talk about the TAT Restaurant frequently and friends and co-workers know that I go there regularly.

{¶ 33} "6. I am employed in a flower shop in Dresden, Ohio.

{¶ 34} "7. Four of the women I work with in the Dresden shop live in Zanesville, Ohio.

{¶ 35} "8. Sometime in the early portion of 2003, when I came to work, the women from Zanesville in my shop informed me that TAT had recently opened a restaurant in Zanesville.

{¶ 36} "9. After hearing this, I assumed that Mr. Corrova had opened a restaurant in Zanesville.

{¶ 37} "10. The next time I went to the TAT Restaurant in Columbus, I asked Mr. James Corrova about his Zanesville restaurant. He let me know that the Zanesville restaurant was not his restaurant."

{¶ 38} Furthermore, John Tatman III, appellee John Tatman's son, testified during his deposition that since December of 2002, one person had come into appellees' restaurant and had "asked if we were affiliated with the * * * one like that in Columbus * * *." Robert Tatman, another son, testified that since the name of appellees' restaurant was changed, two customers had asked him if appellees' restaurant had anything to do with appellant's restaurant in Columbus. One of the customers was a friend of appellant's who was in Zanesville for a funeral.

{¶ 39} The trial court, in its December 16, 2004 judgment entry, cited the fact that appellee Tatman, Inc. had "duly registered its trade name with the Secretary of State * * * in full compliance with Ohio trade name standards" as a reason for granting summary judgment to appellees. However, the fact that the Ohio Secretary of State did not find the two names deceptively similar does not preclude appellant from seeking a permanent injunction against appellees' use of its name. See, for example, *Ohio Natl. Life Ins. Co. v. Ohio Life Ins. Co.* (1961), 188 N.E.2d 324.

{¶ 40} While there is no disputing that the two restaurants are 54 miles part, appellant further provided evidence in support of his motion for summary judgment that he spent, on average, over $30,000 a year in radio advertising for his restaurant, that he had paid for radio advertisements for over 20 years, and that the radio ads were broadcast in an area that included the city of Zanesville and Muskingum County as a whole.[2] Appellant also included an affidavit from Scott Patterson, a sales representative for Newspaper Network of Central Ohio. Patterson, in his affidavit, stated that ads for appellant's restaurant had appeared in Zanesville area newspapers and that appellant had spent a total of $20,318 from 1999 through July 2004 advertising for his restaurant. Furthermore, both restaurants serve pizza and other Italian food and have similar signs, using a red and green color scheme.

{¶ 41} In short, we find that based upon the evidence that appellant submitted in support of his motion for summary judgment, there is a genuine issue of material fact with respect to whether appellees' use of the name "TAT Pizzeria" and appellees' sign containing the "TAT" name and the same color scheme as appellant's sign were likely to cause confusion with respect to whether there is a relationship or affiliation between the two restaurants. The trial court, therefore, erred in granting appellees' motion for summary judgment. However, since there are genuine issues of material fact in dispute, the trial court did not err in overruling appellant's own motion for summary judgment.

{¶ 42} Appellant's assignments of error are, therefore, sustained in part and overruled in part.

{¶ 43} Accordingly, the judgment of the Muskingum County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings in this matter.

Judgment reversed
and cause remanded.

HOFFMAN, P.J., and WISE, J., concur.

---

2. Appellant attached an affidavit from Howard Katz, an account executive with WTVN Radio in Columbus, Ohio, to his motion for summary judgment.